# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**CANDACE PETRIE,**
o/b/o **T.T.,**

|                              |                  |
|------------------------------|------------------|
| **Plaintiff,**               | **7:12-cv-522**  |
|                              | **(GLS)**        |
| **v.**                       |                  |

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

**Defendant.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|------------------|-----------------|

**FOR THE PLAINTIFF:**

| Empire Justice Center | LOUISE MARIE TARANTINO, |
|-----------------------|-------------------------|
| 119 Washington Avenue | ESQ. |
| 2nd Floor | |
| Albany, NY 12210 | |

| Legal Aid Society of | VICTORIA M. ESPOSITO, ESQ. |
|----------------------|----------------------------|
| Northeastern New York, Inc. | |
| 17 Hodskin Street | |
| P.O. Box 648 | |
| Canton, NY 13617 | |

**FOR THE DEFENDANT:**

| HON. RICHARD S. HARTUNIAN | ELIZABETH D. ROTHSTEIN |
|---------------------------|------------------------|
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |

_____

[1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael Astrue, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER
## I.  Introduction

Plaintiff Candace Petrie o/b/o T.T., challenges the Commissioner of

Social Security's denial of Supplemental Security Income (SSI), seeking

judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl.,

Dkt. No. 1.)  After reviewing the administrative record and carefully

considering the arguments, the court affirms the Commissioner's decision

and dismisses the Complaint.

## II.  Background

On January 29, 2008, Petrie protectively filed an application for SSI

under the Social Security Act on behalf of her grandson, a minor, alleging

disability since September 1, 2005.  (*See* Tr.[2] at 59, 97-100.)  After the

application was denied, Petrie requested a hearing before an

---

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 10.)

Administrative Law Judge (ALJ), which was held on January 13, 2010. (*See id.* at 39-58, 60-63, 73-75.) On April 13, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 11-38.)

Petrie commenced the present action by filing a complaint on March 22, 2012, seeking review of the Commissioner's determination. (*See* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 12, 16.)

### III.  **Contentions**

Petrie avers that the Commissioner's decision is not supported by substantial evidence and was arrived at through the application of incorrect legal standards. (*See* Dkt. No. 12 at 18-25.) Specifically, Petrie contends that the ALJ erred in deciding that T.T's impairments did not functionally equal a listed impairment. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence. (*See* Dkt. No. 16 at 11-22.)

### IV.  **Facts**

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See id.* at 1-9; Dkt. No. 12 at 1-17.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of eighteen are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, No. 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI.  Discussion

## A.     Evaluating the Evidence

Petrie first contends that the ALJ erred by incorrectly assessing the evidence of record.  (*See* Dkt. No. 12 at 19-21.)  According to Petrie, the

_____

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) of Title 42 applicable to judicial review of SSI claims.

ALJ erred in: (1) failing to discuss several of T.T.'s medically determinable impairments at step two of the evaluation; (2) improperly weighing the opinion of the nonexamining review consultant J. Dambrocia;[4] (3) failing to assign any weight to the opinion of treating physician Azza Abo-Deeb; and (4) discounting Petrie's testimony. (*See id.*) The Commissioner counters, and the court agrees, that the ALJ properly assessed the medical and other evidence of record. (*See* Dkt. No. 16 at 11-16.)

A district court may overturn an ALJ's decision denying SSI benefits "only where it is based upon legal error or is not supported by substantial evidence."[5] *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999). Turning first to the ALJ's severity determination, the second step of the child disability evaluation requires the ALJ to determine whether the child has "an impairment or combination of impairments that is severe." 20 C.F.R. § 416.924(a). An impairment is not severe if it is merely a "slight abnormality . . . that causes no more than minimal functional limitations."

---

[4] Dambrocia is noted as a specialist in psychology, but his/her credentials are not part of the record herein. (*See* Tr. at 240.) According to the Commissioner, the consultant is Dr. Joseph Dambrocia, a New York State licensed psychologist. (*See* Dkt. No. 16 at 12.) The court accepts the Commissioner's assertion that Dr. Dambrocia is an acceptable medical source. *See* 20 C.F.R. § 416.913(a)(2).

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

*Id*. § 416.924(c).  Notably, "[t]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."  *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).  Further, the omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment(s) in determining the claimant's functional limitations.  *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

Here, the ALJ determined that T.T. suffered from two severe impairments, namely "attention deficit hyperactivity disorder and a mood disorder (variously characterized and to include behavioral problems)."  (Tr. at 17.)  Petrie argues that remand is required because the ALJ failed to discuss T.T.'s medically determinable impairments of anxiety disorder, not otherwise specified, oppositional defiant disorder, rule out learning disorder, posttraumatic stress disorder, and sexual abuse.  (*See* Dkt. No.

12 at 20.)  However, the ALJ's omission of these impairments at step two did not stop the disability analysis.  The ALJ discussed at length, at step three, the treatment records from Dr. Abo-Deeb and St. Lawrence Psychiatric Center—which contain these diagnoses—as well as the opinions of T.T.'s teachers, school psychologist, school counselor, Dr. Abo-Deeb and Dr. Dambrocia.  (*See* Tr. at 17-34, 258-59.)  Thus, there is no basis to remand this matter based upon her step two analysis.  *See Tryon*, 2012 WL 398952, at *4.

Turning to the opinion of Dr. Dambrocia, Petrie claims that the ALJ erred in picking and choosing only those portions of his opinion that were consistent with the ALJ's findings.  (*See* Dkt. No. 12 at 20.)  Specifically, Dr. Dambrocia opined that T.T. had a marked impairment in interacting and relating with others, a less than marked impairment in acquiring and using information, attending and completing tasks, and caring for oneself, and no limitation in moving about and manipulating objects, and health and physical well-being.  (*See* Tr. at 241-42.)[6]  The ALJ, on the other hand, found that T.T. had a less than marked limitation in interacting and relating

---

[6] It should be noted that, because he found marked impairment in only one domain, (*see* Tr. at 241-42), wholesale adoption of Dr. Dambrocia's opinion would also result in a finding that T.T.'s impairments fail to functionally equal a listing.  *See* 20 C.F.R. § 416.926a(d).

with others, but a marked limitation in attending and completing tasks. (*See id.* at 26-31.)

Although state agency psychological consultants are "highly qualified . . . experts in Social Security disability evaluation," their findings do not bind the ALJ. 20 C.F.R. § 416.927(e)(2)(i). In assessing the findings of a state agency psychological consultant, the ALJ is required to consider relevant factors, "such as the consultant's medical specialty and expertise in [Social Security] rules, the supporting evidence in the case record, [and] supporting explanations" provided. *Id.* § 416.927(e)(2)(ii).

Here, the ALJ gave very significant weight to Dr. Dambrocia's opinion because of "his programmatic expertise and consistency with the record." (Tr. at 23.) However, the ALJ's divergence from Dr. Dambrocia's conclusions is supported by substantial evidence.[7] Specifically, the ALJ found that T.T. "does much better in relating to others after only a brief period of treatment." (*Id.* at 31.) Notably, Dr. Dambrocia's opinion was rendered in April 2008. (*See id.* at 239-44.) T.T. began treatment at St. Lawrence Psychiatric Center in July 2008. (*See id.* at 252-80, 293-310.)

_____

[7] Petrie does not contest the ALJ's finding of a marked limitation in the domain of attending and completing tasks. (*See* Dkt. No. 12 at 19 n.20.)

As discussed below, substantial evidence supports the ALJ's determination that T.T. suffered less than marked limitation in the domain interacting and relating with others.  *See infra* Part VI.B.2.  Accordingly, the ALJ sufficiently explained her reasoning for diverging from Dr. Dambrocia's functional analysis, and her decision to do so is supported by substantial evidence.

Petrie next argues that the ALJ erred in failing to assign any weight to the opinion of Dr. Abo-Deeb.  (*See* Dkt. No. 12 at 20.)  Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 416.927(c).  Accordingly, the regulations require an ALJ to "give good reasons" for the weight afforded to a treating source's opinion.  20 C.F.R.

§ 416.927(c)(2); *see Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009). "Where application of the correct legal principles to the record could lead to only one conclusion," however, "there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

In this case, the ALJ explicitly considered Dr. Abo-Deeb's opinion that T.T.'s attention and concentration were impaired, but had improved with treatment. (*See* Tr. at 23, 232-33.) Moreover, the ALJ's finding of a marked impairment only in the domain of "attending and completing tasks" is consistent with her opinion. (*See id.* at 26-28, 225-34.) Indeed, Dr. Abo-Deeb reported that T.T possessed age appropriate fine/gross motor skills, sensory abilities, communication skills, and cognitive skills and was able to care for himself. (*See id.* at 228, 233.) Thus, although it is unclear what weight she assigned the opinion, the court declines to remand this matter on that basis. *See Tryon*, 2012 WL 398952, at *8 (N.D.N.Y. Feb. 7, 2012).

Lastly, Petrie contends that the ALJ erred in finding her allegations and testimony to be "partially credible." (Tr. at 23; *see* Dkt. No. 12 at 21.) In making her credibility determination, the ALJ noted that "[t]he evidence of record reflects a chaotic household" and Petrie's testimony was

inconsistent with treatment records reflecting that "[d]uring periods in treatment . . . Petrie will report much improved behavior within a very short period of time." (Tr. at 23.) Petrie contends that this finding was in error because: (1) the ALJ mischaracterized her household as chaotic; (2) her testimony was consistent with the record as a whole; and (3) the ALJ erred in considering potential financial gain as a factor in evaluating her credibility. (*See* Dkt. No. 12 at 21.)

"It is the function of the Secretary, not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Thus, "to the extent that the claimant's . . . contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). That determination "must contain specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear" the weight afforded "and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. 34,483, 34,484 (July 2, 1996).

Here, the ALJ noted that T.T.'s home life included "rejection by his parents, a handicapped sibling sometimes in the house, other siblings

being treated differently by his parents, and a move to a new home and school." (Tr. at 24; *see id.* at 252-55, 257-58, 293, 297-98, 300, 307, 309-10.) Thus, the ALJ's conclusion that T.T.'s home life was "chaotic" is supported by substantial evidence. (*See id.* at 23.) Further, T.T. began treatment at St. Lawrence Psychiatric Center in July 2008. (*See id.* at 252-56.) August 2008 treatment records note "Petrie reported that she had been slowly reducing [T.T.'s] medication. Although active, distractable and impulsive at times, [T.T.] was much less physically restless and was able to remain seated for longer periods of time without having to be told to do so." (*Id.* at 264.) Thereafter, in December 2008, T.T. was discharged from outpatient treatment due to his progress. (*See id.* at 279.) However, in September 2009, T.T. returned to the clinic when, despite an increase in his medication, he had continued behavioral problems in the afternoons. (*See id.* at 293-96.) Shortly thereafter, Petrie reported a notable improvement in T.T.'s behavior. (*See id.* at 303.) In November 2009, Petrie reported that T.T. had made improvements and was more compliant with adult direction, but continued to display some behavioral problems. (*See id.* at 307.) Finally, in December 2009, it was noted that T.T. was doing well at home, but had difficulty with his adjustment to his new school

and bus ride.  (*See id.* at 310.)  Thus, the ALJ's findings with respect to the effectiveness of treatment on T.T.'s symptoms is supported by substantial evidence.  (*See id.* at 23.)

Lastly, the ALJ gave "significant weight" to the opinions of T.T.'s teachers because they have the most direct and frequent contact with T.T. and no monetary interest in the outcome of the case.  (*See id.* at 23.) Petrie contends that the ALJ could not consider "potential financial gain" as a factor in making her credibility determination because it is not a listed factor under the regulations.  (*See* Dkt. No. 12 at 21.)  However, the 20 C.F.R. § 416.929(c)(3) factors are "'examples of alternative evidence that may be useful [to the credibility inquiry], and not . . . a rigid, seven-step prerequisite to the ALJ's finding.'"  *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004)); *cf. Myles v. Astrue*, No. 07-CV-0242, 2009 WL 799952, at *5 (W.D.N.Y. Mar. 24, 2009).  Based on the foregoing, the ALJ's credibility determination is supported by substantial evidence.  (*See id.* at 23.)

## B.    Functional Equivalency

Petrie also argues that the ALJ erred in finding that T.T. did not have

marked limitations in two of the six functional domains.  (*See* Dkt. No. 12 at 21-25.)  Specifically, Petrie argues that T.T. had marked limitations in acquiring and using information and interacting and relating with others. (*See id.*)  As the Commissioner argues, however, the ALJ's functional equivalency analysis is supported by substantial evidence and will not be disturbed.  (*See* Dkt. No. 16 at 16-21.)

    *1.    Acquiring and Using Information*

This domain contemplates a child's ability to "acquire or learn information, and how well [he] use[s] the information [he has] learned."  20 C.F.R. § 416.926a(g).  Children in T.T.'s age range "should be able to learn to read, write, and do math, and discuss history and science," as well as "use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [ ] ideas, and by understanding and responding to the opinions of others."  *Id.* § 416.926a(g)(2)(iv).  The ALJ found that T.T. had less than a marked limitation in this domain, relying on the evaluations of his teachers, school psychologist, school counselor, and Dr. Dambrocia.  (*See* Tr. at 24-26.)

Petrie argues that the ALJ applied an incorrect standard to determine

whether T.T's limitation in this domain was "marked." (*See* Dkt. No. 12 at 21-22.)  Under the regulations, a claimant has a "marked" limitation in a given domain when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities" in that domain.  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation, on the other hand, "interferes very seriously" with those abilities.  *Id.* § 416.926a(e)(3)(i).  Although the ALJ correctly noted this standard in her decision, (*see* Tr. at 16-17), she found that T.T. had a less than marked limitation in the domain of "acquiring and using information" because "a sufficient number of very serious problems in this domain have not been identified," (*id.* at 26).  Despite this apparent misstatement, the ALJ's determination in this domain is supported by substantial evidence.

In March 2008, first grade teacher Diane Moore completed a teacher questionnaire regarding T.T.'s functioning.  (*See id.* at 124-30.)  In the domain of Acquiring and Using Information, Moore rated T.T. as suffering "[a] slight problem" in six skill areas; "[a]n obvious problem" in two skill areas, and "[a] very serious problem" in one skill area.  (*Id. at* 124.)  In the area of recalling and applying previously learned material she rated T.T. as having a slight problem in reading and a very serious problem in math.

15

(*See id.*)  Thereafter, T.T.'s art teacher, Ashley Havens, completed a

questionnaire and reported that T.T. "never or rarely" had difficulty learning

new material, recalling previously learned material, demonstrating short-

term memory or comprehending generally.  (*See id.* at 138, 143.)

According to Havens, T.T. had a "moderate" difficulty expressing ideas and

demonstrating problem solving skills and an "extreme" difficulty following

instructions.  (*See id.* at 138.)  Havens described T.T. as "extremely

intelligent . . . but [ ] very easily distracted and socially behind." (*Id.*)  T.T.'s

school psychologist also completed a questionnaire and opined that in this

domain T.T. had a moderate difficulty in seven areas and a marked

difficulty in the area of following instructions.  (*See id.* at 144, 149.)  In a

questionnaire completed by T.T.'s physical education teacher, it was

reported that T.T. always had difficulty demonstrating problem solving

skills.  (*See id.* at 171, 176.)  Lastly, T.T.'s third grade teacher, Lynette

Piercey, noted that T.T. received extra help for math and reading three

days out of a six-day cycle and rated T.T. in ten activities related to the

domain acquiring and using information.  (*See id.* at 191, 197.)  According

to Piercey, T.T. had a slight problem in understanding and participating in

class discussions and recalling and applying previously learned materials

as well as an obvious problem comprehending oral instructions, understanding school and content vocabulary, and learning new material. (*See id.* at 191.) T.T. also had a serious problem in reading and comprehending written material, comprehending and doing math problems, expressing ideas in written form, and applying problem-solving skills in class discussions and a very serious problem in providing organized oral explanations and adequate descriptions. (*See id.*)

Based on the foregoing, and considering the opinion of Dr. Dambrocia, (*see id.* at 241), despite T.T.'s deficiencies in math and reading, the ALJ's determination of less than marked limitation in this domain is supported by substantial evidence.

Petrie further argues that the ALJ failed to consider the effects of a structured or supportive setting in her assessment of T.T.'s functioning in this domain. (*See* Dkt. No. 12 at 22-23.) An ALJ is required to consider the claimant's "need for a structured setting and the degree of limitation in functioning [the claimant has] or would have outside the structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(C). "Even if [the claimant] is able to function adequately in the structured or supportive setting, [the ALJ] must consider how [he] function[s] in other settings and whether [he] would

continue to function at an adequate level without the structured or supportive setting." *Id.* While the ALJ must consider these factors, "[t]he regulation does not command the ALJ to explicitly discuss [her] consideration." *Watson ex rel. K.L.W. v. Astrue*, No. 07-CV-6417T, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) (internal quotation marks and citation omitted).

Here, it is clear that the ALJ considered T.T.'s limitations both within and without his structured educational setting. Specifically, the ALJ noted that T.T. gets one on one help for math and reading, had aides at his former school, sits with an adult monitor on the school bus and a highschool student at lunch, and behaves "better at school, in the more structured, less chaotic environment." (Tr. at 24; *see id.* at 22.) Moreover, the ALJ assessed the reports of T.T.'s general education teachers, school counselor, and school psychologist, as well Dr. Dambrocia. (*See id.* at 20-26.) Notably, T.T. remained in a regular education classroom and participated in the same state and local assessments that were administered to general education students. (*See id.* at 123, 179-80, 190.)

### 2. *Interacting and Relating with Others*

This domain contemplates a claimant's ability to "initiate and sustain

emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). School-age children should be able to, among other things, develop more lasting friendships with children who are the same age, begin to understand how to work in groups, talk to people of all ages, and to speak in a manner that both familiar and unfamiliar listeners readily understand. *See id.* § 416.926a(i)(2)(iv).

Petrie argues that the ALJ applied an inappropriate standard in determining that T.T. had a less than marked limitation in this domain. (*See* Dkt. No. 12 at 23-25.) According to Petrie, T.T. was receiving various medications daily throughout the time frame during which teacher questionnaires were completed indicating that T.T. had "obvious" to "very serious" problems in this domain, and, thus, the ALJ erred in finding that T.T. "does much better in relating to others after only brief periods of treatment." (Tr. at 31; Dkt. No 12 at 23-24; *see* Tr. at 23.) However, as the Commissioner points out, (*see* Dkt. No. 16 at 19), the ALJ properly relied on treatment records from St. Lawrence Psychiatric Center which indicate that T.T. demonstrated notable improvement in his behaviors shortly after

beginning treatment there, (*see* Tr. at 252-56, 266, 270-72, 275, 276-77, 279-80, 293-96, 303, 305, 306-07, 310).  In December 2009, three months after T.T. re-entered treatment, licensed psychologist Susan Moreines noted that T.T. had made progress since the last session, displayed no signs of anger, irritability, or unhappiness, was able to express his feelings and needs verbally, remain seated next to Petrie and participate fully in all topics of discussion, and, overall, was doing well at home.  (*See id.* at 310.)  Further, in January 2010, Piercey evaluated T.T. in activities related to the domain "interacting and relating with others" and opined that T.T. suffered a serious problem in only one activity—namely, expressing anger appropriately—but a slight problem in one activity and an obvious problem in ten activities.  (*See id.* at 193.)  Again, Petrie argues that the ALJ failed to consider the effects of a structured setting on T.T.'s functioning in this domain.  (*See* Dkt. No. 12 at 24-25.)  However, as the ALJ considered the treatment records form St. Lawrence Psychiatric Center—which noted T.T.'s behavior at home and in school—as well as the opinions of T.T.'s teachers and school counselors, it is clear that she considered T.T.'s limitations both within and without his structured setting.  (*See* Tr. at 28-31.)

Accordingly, the ALJ's finding that T.T. suffered less than marked limitation in his ability to interact and relate with others is supported by substantial evidence.

## C.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Petrie's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 11, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court